Nathaniel K. Charny (NC 5664)
Charny & Wheeler
9 West Market Street
Rhinebeck, NY 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Plaintiff Kenneth Zorn-Hill

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH ZORN-HILL,<br><br>                      Plaintiff,<br><br>-vs-<br><br>A2B TAXI LLC, EVERALD GILLIARD, in his individual capacity, and TREVONNE GILLIARD, in her individual capacity,<br><br>                      Defendants. | Civil Action No.<br><br>COMPLAINT |

1. Plaintiff Kenneth Zorn-Hill (Plaintiff) by and through his attorneys Charny & Wheeler brings this action pursuant to the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) to recover unpaid wages and other damages from Defendants A2B Taxi LLC, Everald Gilliard and Trevonne Gilliard (collectively Defendants) on his own behalf and on behalf of those similarly situated.

JURISDICTION AND VENUE

2. This Court has Federal question jurisdiction in that this action arises under Federal statute, 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction over the State Law claims pursuant to 29 U.S.C. § 1367.

4. Venue is proper in that the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5. Plaintiff Kenneth Zorn-Hill is an adult individual that was formerly employed by Defendants.

6. Defendant A2B Taxi LLC (herein Defendant A2B) is a New York State Domestic Limited Liability Company organized under the laws of the State of New York whose principal office is located in South Fallsburg, New York, Sullivan County. Defendant A2B provides non-emergency medical transportation.

7. Defendant Everald Gilliard (herein Defendant E. Gilliard) is the chief executive officer and president of Defendant A2B.

8. Defendant Trevonne Gilliard (herein Defendant T. Gilliard) manages and runs the day to day operations of Defendant A2B, signs the paychecks, and upon information is an owner of Defendant A2B.

9. Defendant E. Gilliard and Defendant T. Gilliard (collectively the Owner Defendants) maintained control over all aspects of the day-to-day functions of Defendant A2B including: (i) operational control over the operational enterprise, including actively managing, supervising and directing the business operations; (ii) power to establish, and in fact establishment of, the terms of employment of Plaintiff and others similarly situated; (iii) power to hire and fire; (iv) control over employee work schedules; (v) the ability to determine the rate and method of employee payment; and (vi) maintaining employment records of the employing entity.

10. Owner Defendants acted directly and indirectly in Defendant A2B's interests in relation to its employees, including Plaintiff and those similarly situated.

11. For all times relevant to this Complaint Defendants have constituted an enterprise engaged in commerce, as defined by 29 U.S.C. § 203(s)(1), upon information and belief with a gross annual volume of business done of not less than $500,000 and with employees engaged in commerce, as defined by 29 U.S.C. § 203(b).

12. For all times relevant to this Complaint Defendants' employees have engaged in commerce by regularly travelling interstate and regularly providing medical transportation services by and among several states.

13. For all times relevant to this Complaint employees of Defendants have regularly used interstate wires when communicating with customers in the various states.

14. For all times relevant to this Complaint Defendants have performed related activities through unified operations or common control with the common purpose of running a for-profit business that provides medical transportation in various states.

15. For all times relevant to this Complaint Defendants have been an employer within the meaning of 29 U.S.C. §203(d) and Article 6 of New York State Labor Law and its corresponding regulations, 12 NYCRR 142-2.2.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

16. For purposes of the FLSA collective action, the Class is defined as:

> All Drivers employed by Defendants during the period beginning three (3) years prior to the filing of this Complaint to the present who were subject to Defendants' policy or practice not to pay overtime compensation at the rate of time and one half for all hours over forty in a workweek.

17. For purposes of the Rule 23 class action, the Class is defined as:

> All Drivers employed by Defendants during the period beginning six (6) years prior to the filing of this Complaint to the present who were subject to Defendants' policies or practices: (1) not to pay overtime compensation at the rate of time and one half for all hours over forty in a workweek; and/or (2) not to pay an additional hour of pay at the minimum wage rate for drivers working a spread of hours exceeding 10 hours and/or (3) not to provide pay statements as required under New York Labor Law Section 195.

18. Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

19. The precise number of individuals in the Class is known only to Defendants. Upon information and belief, the Class includes at least forty (40) individuals.

20. Joinder of all Class members is impracticable.

21. There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   i. whether Defendants paid Plaintiff and the Class for all the hours they worked;

   iii. whether Defendants had a duty to pay Plaintiff and the Class members overtime premium pay for hours worked in excess of 40 hours per work week;

   iv. whether Defendants failed and/or refused to pay Plaintiff and the Class, overtime premium pay for hours worked in excess of 40 hours per work week;

   v. the nature and extent of each Class-wide injury and the appropriate measure of damages for each member of the Class;

      vi.      whether Defendants' policy of failing to pay overtime was instituted willfully or with reckless disregard of the law;

      viii.      whether Defendants policy and practice of failing to pay Plaintiff and the Class all wages due within the time provided by law violates the NYLL;

      ix.      whether Defendants paid Plaintiff and the Class spread of hours wages when required; and

      x.      whether Defendants violated the NYLL wage and hour laws by failing to keep records of the hours Plaintiff and members of the Class worked.

22.     Plaintiff's claims are typical of the claims of the Class. The failure of Defendants to comply with the NYLL served to deprive all Class members of the protection of these laws. Plaintiff and the Class work or have worked for Defendants and have been subjected to their policy and pattern or practice of failing to pay wages required by the NYLL.

23.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff recognizes that as a class representative, he must represent and consider the interests of the Class just as he would represent and consider his own interests. He understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Class. He recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

24. Plaintiffs' counsel are experienced in conducting class actions in federal courts. Plaintiffs' counsel is prepared to advance costs necessary to litigate this matter zealously, including the costs of Class notice.

25. The common claims of Plaintiff and the Class predominate over any claims affecting individual Class members.

26. Plaintiff's interests in the claims are in no way antagonistic or adverse to those of other class members.

27. A class action under Rule 23 of the Federal Rules of Civil Procedure is superior to other available methods of adjudicating the claims because, inter alia:

   i. Common issues of law and fact, as well as the relatively small claim of each Class member, substantially diminishes the interest of members of the Class in individually controlling the prosecution of separate actions;

   ii. Many of the Class members are unaware of their rights to prosecute these claims and lack the means and resources to secure legal assistance; and

   iii. A class action can be managed without undue difficulty since Defendants have regularly committed the violations complained of herein and were required to maintain detailed records concerning each member of the Class.

## FACTS

28. Defendants provide non-emergency medical transportation services to their clients.

29. Plaintiff was employed by Defendants for the period December 2012 through December 2017 as a Driver.

30. For the first three years of employment, Plaintiff worked day-long shifts that started at 7:00 am and ended when the driving duties were completed, most often 7:00 pm.

31. For these first three years of employment, Plaintiff's typical day lasted as follows:

    10 hour days, 20% of the time;

    12 hours days, 60% of the time; and

    14 hour days, 20% of the time.

32. Plaintiff was paid a per diem rate for all hours worked in a given day, without regard to the number of hours worked.  Upon information and belief, that per diem rate was as follows:

    2013-2014, $100 per shift; and

    2015-2017, $135 per shift.

33. For the first three years of employment, with almost no exceptions, Plaintiff worked a sixth day (Saturday).  Approximately 25% of the time, Plaintiff also worked a seventh day (Sunday).

34. Plaintiff was paid what was called a "bonus" for the sixth and seventh days, equal to either a full per diem pay or half of a per diem pay.

35. Plaintiff regularly worked in excess of 40 hours per week.

36. Despite regularly working in excess of 40 hours per week, Plaintiff was paid only the straight time per diem (or "bonus") pay.

37. Throughout his employment with Defendants Plaintiff was never provided with information, either written or verbal, regarding his eligibility for overtime pay.

38. Beginning in 2016 and continuing until his termination from employment in December 2017, Plaintiff was given additional duties, including preparing the vehicles in the

morning and training new drivers. These additional duties meant that Plaintiff's day was extended 1.5 hours, meaning that Plaintiff was arrive earlier to work and stay later to accomplish these duties, and that averaged 1.5 hours per day.

39. Beginning in 2016 and continuing until his termination from employment, Plaintiff stopped working weekends, and for these last two years of employment worked five days a week.

40. All Drivers who work for Defendant A2B are paid on the basis as set forth in this Complaint and as such all Drivers who work for Defendant A2B work and worked in excess of forty hours in a week and where not paid overtime rates as required by law.

41. Upon information and belief, looking back the last six years there are at least forty individuals, and more likely approximately seventy-five individuals who have been subject to this compensation scheme and as such are owed unpaid overtime under the NYLL.

42. Defendants have failed to comply with FLSA workplace posting requirements. Defendants' failure in this regard constitutes an attempt to conceal its employees' rights and discourage them from taking steps to enforce the law as it applies to their circumstances.

43. Defendants provided a pay stub (herein Wage Statement) to Plaintiff and all of the other Drivers with each paycheck that contained incomplete, false and misleading information, to wit, the pay stub provided stated only the number of hours worked on a single day, not the number of hours worked in the relevant work week.

44. The Wage Statements did not and have never included the number of regular hours worked, and the number of overtime hours worked.

45. During the entire period of his employment, Defendants have never provided Plaintiff or any of the other similarly situated drivers with a notice (herein Wage Notice)

containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer and the name of the employer.

## FIRST CAUSE OF ACTION
## FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA

46. Plaintiff repeats and re-alleges the preceding allegations.

47. Defendants employed Plaintiff and those similarly situated for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and those similarly situated for the time worked in excess of 40 hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the requirements of the Fair Labor Standards Act.

48. As a consequence of the willful underpayment of wages, Plaintiff and those similarly situated have incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages and attorneys fees and costs, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF STATE LAW

49. Plaintiff repeats and re-alleges the preceding allegations.

50. Defendants employed Plaintiff and those similarly situated for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and those similarly situated for the time worked in excess of 40 hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the requirements of Article 6 of the Labor Law of the State of New York.

51. As a consequence of the willful underpayment of wages alleged above, the Plaintiff and those similarly situated have incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensations pursuant to State law together with interest, liquidated damages and attorneys fees and costs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION FAILURE TO PROVIDE WAGE NOTICES AND WAGE STATEMENTS REQUIRED BY STATE LAW

52. Plaintiff repeats and realleges the preceding allegations.

53. During the term of his employment with Defendants, Plaintiff and those similarly situated were not provided the requisite Wage Notice and Wage Statement information as required by state law, including Article 6 of the Labor Law of the State of New York and in particular New York Labor law Section 195(1)(A) and New York Labor Law Section 195(3).

## REQUEST FOR RELIEF

54. Plaintiff requests the following relief:

(i) Certifying this matter as a Collective Action under FLSA;

(ii) Certifying this matter as a Class Action under NYLL:

(iii) Judgment against Defendants for willful violation of the FLSA and New York State Law;

(iv) Liquidated damages as provided for by the FLSA and New York State Law;

(v) Pre- and post-judgment interest;

(vi) Any and all further relief available under the FLSA and New York State Law;

(vii) All costs and attorneys' fees incurred prosecuting these claims; and

(viii) Such other and further relief as the Court deems just and equitable.

Dated: Rhinebeck, New York
February 4, 2019

_____
Nathaniel K. Charny (NC 5664)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Plaintiff Kenneth Zorn-Hill